Pro Se 7 (Rev. 12/16) Complaint for Employment Discrimination

# UNITED STATES DISTRICT COURT

for the

Central District of California

\_\_Eastern_____ Division

Tiyana Nicole Benitez

Case No.

*(to be filled in by the Clerk's Office)*

ED CV 24 - 01876-JGB (SHK)

Jury Trial: *(check one)* ☑Yes ☐No

*Plaintiff(s)*
*(Write the full name of each plaintiff who is filing this complaint.*
*If the names of all the plaintiffs cannot fit in the space above,*
*please write "see attached" in the space and attach an additional*
*page with the full list of names.)*

-v-

County of San Bernardino
"see attached"

*Defendant(s)*
*(Write the full name of each defendant who is being sued. If the*
*names of all the defendants cannot fit in the space above, please*
*write "see attached" in the space and attach an additional page*
*with the full list of names.)*

## COMPLAINT FOR EMPLOYMENT DISCRIMINATION

### I.    The Parties to This Complaint

#### A.    The Plaintiff(s)

Provide the information below for each plaintiff named in the complaint. Attach additional pages if needed.

| | |
|---|---|
| Name | Tiyana Nicole Benitez |
| Street Address | 390 S Mollison Ave #16 |
| City and County | El Cajon San Diego County |
| State and Zip Code | California 92020 |
| Telephone Number | 909-922-4523 |
| E-mail Address | tiyanab@live.com |

#### B.    The Defendant(s)

Provide the information below for each defendant named in the complaint, whether the defendant is an individual, a government agency, an organization, or a corporation. For an individual defendant, include the person's job or title *(if known)*. Attach additional pages if needed.

Pro Se 7 (Rev. 12/16) Complaint for Employment Discrimination

Defendant No. 1

| | |
|---|---|
| Name | County of San Bernardino |
| Job or Title *(if known)* | |
| Street Address | 157 5th St |
| City and County | San Bernardino San Bernardino County |
| State and Zip Code | California 92415 |
| Telephone Number | (909) 387-8304 |
| E-mail Address *(if known)* | |

Defendant No. 2

| | |
|---|---|
| Name | Jamie Richter |
| Job or Title *(if known)* | |
| Street Address | 150 S Lena St |
| City and County | San Bernardino San Bernardino County |
| State and Zip Code | California 92415 |
| Telephone Number | (909) 388-0242 |
| E-mail Address *(if known)* | |

Defendant No. 3

| | |
|---|---|
| Name | County of San Bernardino, Children and Family Services |
| Job or Title *(if known)* | Department |
| Street Address | 150 S Lena St |
| City and County | San Bernardino San Bernardino County |
| State and Zip Code | California 92415 |
| Telephone Number | (909) 388-0242 |
| E-mail Address *(if known)* | |

Defendant No. 4

| | |
|---|---|
| Name | Hanna Tavill |
| Job or Title *(if known)* | |
| Street Address | 385 N Arrowhead Ave |
| City and County | San Bernardino San Bernardino County |
| State and Zip Code | California 92415 |
| Telephone Number | (909) 387-5455 |
| E-mail Address *(if known)* | |

### C.    Place of Employment

The address at which I sought employment or was employed by the defendant(s) is

| | |
|---|---|
| Name | County of San Bernardino, Children and Family Services |
| Street Address | 15020 Palmdale Road |
| City and County | Victorville San Bernardino County |
| State and Zip Code | California 92392 |
| Telephone Number | (909) 388-0242 |

## II.    Basis for Jurisdiction

This action is brought for discrimination in employment pursuant to *(check all that apply)*:

[✔]    Title VII of the Civil Rights Act of 1964, as codified, 42 U.S.C. §§ 2000e to 2000e-17 (race, color, gender, religion, national origin).

*(Note:  In order to bring suit in federal district court under Title VII, you must first obtain a Notice of Right to Sue letter from the Equal Employment Opportunity Commission.)*

[ ]    Age Discrimination in Employment Act of 1967, as codified, 29 U.S.C. §§ 621 to 634.

*(Note:  In order to bring suit in federal district court under the Age Discrimination in Employment Act, you must first file a charge with the Equal Employment Opportunity Commission.)*

[ ]    Americans with Disabilities Act of 1990, as codified, 42 U.S.C. §§ 12112 to 12117.

*(Note:  In order to bring suit in federal district court under the Americans with Disabilities Act, you must first obtain a Notice of Right to Sue letter from the Equal Employment Opportunity Commission.)*

[ ]    Other federal law *(specify the federal law)*:

[✔]    Relevant state law *(specify, if known)*:

"see attached"

[ ]    Relevant city or county law *(specify, if known)*:

Pro Se 7 (Rev. 12/16) Complaint for Employment Discrimination

## III.    Statement of Claim

Write a short and plain statement of the claim.  Do not make legal arguments.  State as briefly as possible the facts showing that each plaintiff is entitled to the damages or other relief sought.  State how each defendant was involved and what each defendant did that caused the plaintiff harm or violated the plaintiff's rights, including the dates and places of that involvement or conduct.  If more than one claim is asserted, number each claim and write a short and plain statement of each claim in a separate paragraph.  Attach additional pages if needed.

A.    The discriminatory conduct of which I complain in this action includes *(check all that apply)*:

- [ ]  Failure to hire me.
- [ ]  Termination of my employment.
- [x]  Failure to promote me.
- [ ]  Failure to accommodate my disability.
- [x]  Unequal terms and conditions of my employment.
- [x]  Retaliation.
- [ ]  Other acts *(specify)*:

*(Note:  Only those grounds raised in the charge filed with the Equal Employment Opportunity Commission can be considered by the federal district court under the federal employment discrimination statutes.)*

B.    It is my best recollection that the alleged discriminatory acts occurred on date(s)

December 2020, June 2022, June 2023, August 2023, September 2023, January 2024.

C.    I believe that defendant(s) *(check one)*:

- [x]  is/are still committing these acts against me.
- [ ]  is/are not still committing these acts against me.

D.    Defendant(s) discriminated against me based on my *(check all that apply and explain)*:

- [x]  race            African American
- [ ]  color
- [ ]  gender/sex
- [ ]  religion
- [ ]  national origin
- [ ]  age *(year of birth)*                    *(only when asserting a claim of age discrimination.)*
- [ ]  disability or perceived disability *(specify disability)*

E.    The facts of my case are as follows.  Attach additional pages if needed.

Pro Se 7 (Rev. 12/16) Complaint for Employment Discrimination

"see attached"

*(Note: As additional support for the facts of your claim, you may attach to this complaint a copy of your charge filed with the Equal Employment Opportunity Commission, or the charge filed with the relevant state or city human rights division.)*

## IV.  Exhaustion of Federal Administrative Remedies

A.    It is my best recollection that I filed a charge with the Equal Employment Opportunity Commission or my Equal Employment Opportunity counselor regarding the defendant's alleged discriminatory conduct on *(date)*
February 26, 2024

B.    The Equal Employment Opportunity Commission *(check one)*:

    ☐    has not issued a Notice of Right to Sue letter.

    ☑    issued a Notice of Right to Sue letter, which I received on *(date)*   05/04/2024   .

    *(Note: Attach a copy of the Notice of Right to Sue letter from the Equal Employment Opportunity Commission to this complaint.)*

C.    Only litigants alleging age discrimination must answer this question.

Since filing my charge of age discrimination with the Equal Employment Opportunity Commission regarding the defendant's alleged discriminatory conduct *(check one)*:

    ☐    60 days or more have elapsed.

    ☐    less than 60 days have elapsed.

## V.  Relief

State briefly and precisely what damages or other relief the plaintiff asks the court to order. Do not make legal arguments. Include any basis for claiming that the wrongs alleged are continuing at the present time. Include the amounts of any actual damages claimed for the acts alleged and the basis for these amounts. Include any punitive or exemplary damages claimed, the amounts, and the reasons you claim you are entitled to actual or punitive money damages.

"see attached"

## VI.    Certification and Closing

Under Federal Rule of Civil Procedure 11, by signing below, I certify to the best of my knowledge, information, and belief that this complaint: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Rule 11.

### A.    For Parties Without an Attorney

I agree to provide the Clerk's Office with any changes to my address where case–related papers may be served. I understand that my failure to keep a current address on file with the Clerk's Office may result in the dismissal of my case.

Date of signing:          09/03/2024

Signature of Plaintiff

Printed Name of Plaintiff       Tiyana Nicole Benitez

### B.    For Attorneys

Date of signing:

Signature of Attorney

Printed Name of Attorney

Bar Number

Name of Law Firm

Street Address

State and Zip Code

Telephone Number

E-mail Address

### III. Statement of Claim Additional Page

1. **Discriminatory Practices:**
   - **Discrimination in Employment Decisions:** The Plaintiff alleges that employment decisions, including denials of promotions and transfers in 2022 and 2023, were made based on racial discrimination and retaliation. This discrimination, perpetrated by The County of San Bernardino, it's Department of Children and Family Services, white leadership, and white attorney personnel, adversely impacted the Plaintiff's career advancement and pay. Further, the Plaintiff was routinely denied pay negotiations that were afforded to White personnel for similar roles, with similar or less qualifications than the Plaintiff.

2. **Retaliation for Complaints:**
   - **Retaliation:** The Plaintiff experienced retaliation for reporting misconduct by white attorney personnel and for raising concerns about a hostile work environment caused by the same white personnel and leadership. This retaliation included an unfounded investigative inquiry, subsequent investigative inquiry with written discipline issued, and denial of promotional and transfer opportunities.
   - **Denied Grievance Filing:** The Plaintiff was prevented from filing a grievance by union representation, which further compounded the retaliatory impact and prevented formal recourse.

3. **Hostile Work Environment:**
   - **Workplace Hostility:** The Plaintiff endured a hostile work environment due to derogatory remarks and unequal treatment by white personnel in their official acts as Defendant's leadership. Complaints to Defendant's administration and HR about this environment were not addressed, exacerbating the emotional and professional toll.

4. **Medical Impact:**
   - **Medical Stress Leave:** The Plaintiff was placed on medical leave for stress directly attributed to the work environment and retaliatory actions of the Defendant. In an official act, the Defendant's leadership notified the Plaintiff in writing that the Plaintiff had no right to return to employment following the leave. The stress-related leave underscores the severe impact of the discriminatory and retaliatory practices on the Plaintiff's health.

5. **Failure to Address Complaints:**
   - **Inaction on Complaints:** Despite reporting the issues to leadership, HR, union representatives and the Defendant's Equal Employment Opportunity Department, no effective investigation or remediation occurred by the Defendant, indicating a failure to address the discrimination and retaliation.

Statement of Facts

1. Benitez, 35, is a working mother of two.
2. Benitez has been employed with County of San Bernardino, Department of Children and Family Services since December 2014. Benitez initially worked as a Work Experience Worker from December 2014 - January 2015, then as an intake specialist from 2015-2019 and finally a social service practitioner (referred to hereafter as "SSP") from 2019 - present.
3. Benitez was formally offered promotions in 2018 and 2019 and automatically promoted to SSP III in 2023 per Memorandum of Understanding-Professional Unit 2020-2024.
4. In August 2018, Benitez declined a promotion to Social Worker II-trainee due to the inability to negotiate salary. As per Defendant's official description for the position for Social Worker II-trainee, Benitez' qualifications, that included being within three (3) months of receiving Master of Social Work degree exceeded minimum requirements for starting pay.
5. In April 2019, SSP Benitez was successful in the interview process for promotion to SSP II. During the promotion evaluation, Benitez was again denied salary negotiation despite citing extensive experience to the Defendant's HR manager and Defendant's management.
6. Benitez was informed by multiple White employees that they each successfully negotiated higher salaries for similar roles during promotional evaluations with the Defendant's White HR manager. Benitez was informed by the Defendant's HR manager in August 2018 that current employees could not negotiate salaries, a policy that did not apply to the previously mentioned White employees.
7. After completing a Master of Social Work degree in June 2019, Benitez was officially promoted to SSP II.
8. Benitez was initially assigned to the Defendant's Jurisdiction/Disposition (referred to hereafter as "J/D") unit in November 2019 after completing SSP training.
9. From June 2019 to October 2023, Benitez' role in the Defendant's Department consisted of completing risk assessments, direct client contact, investigations, documentation and creating legal documents with case recommendations to be presented in juvenile dependency court.
10. In July 2020, Benitez began experiencing issues with several White attorney staff responsible for providing legal assistance in the Defendant's juvenile dependency cases. Benitez initially reported the issues to Defendant's management including Benitez' direct supervisor and manager.
11. In July 2020, while performing regular duties as a J/D writer, Benitez had a phone consultation with White attorney staff regarding a court case recommendation. During this consultation, White attorney staff accused Benitez of bias towards a minority client, and further questioned Benitez' suitability as an investigation. Benitez

reported concerns about the conversation to Benitez' direct supervisor, who
documented the issue and escalated to the assigned manager.

12. In July 2020, Benitez additionally informed the assigned manager of increasingly
hostile interactions with specific White attorney staff, including that they were
hindering job performance. Benitez was told the matter would be addressed with the
White attorney staff's supervisor.

13. In September 2020 after two months without any updates and worsening issues,
Benitez escalated the matter to the Defendant's management and administration
that included the assistant director, and director, describing how the White attorney
staff's actions created a hostile work environment that impeded Benitez's job
performance and that of other employees serving minority clients. The assistant
director and director responded to Benitez in September 2020 by email indicating
they would investigate the matter.

14. In the same month, after reporting concerns to the Defendant's management, a
separate incident occurred between staff and an African American employee that
highlighted ongoing racial disparity issues within the Department and promoted an
office wide meeting with the Defendant's administration.

15. Benitez did not feel comfortable speaking at a September 2020 meeting addressing
racial disparity due to previous unreceptive responses from the Defendant's
management. Instead, following the meeting Benitez emailed administration
expressing concerns about bias of specific White attorney staff and its impact on
work performance.

16. In October 2020, Benitez was notified by the direct supervisor that the Defendant's
White management staff was displeased with Benitez' communication to the
Defendant's administration as the management staff was reprimanded for the
concerns Benitez reported. Benitez was encouraged to apologize to the offended
management staff.

17. On November 9, 2020, Benitez was temporarily assigned to a new supervisor, after
previous supervisor was reassigned. Benitez received an email requesting a
meeting to be welcomed to the new unit and review caseload on December 20,
2020. During the meeting, the temporary supervisor informed Benitez that the
Defendant's White management staff labeled Benitez as "aggressive".

18. In December 2020 Benitez received an email from the same White management
staff informing that Benitez was being investigated by the Defendant's HR
Department for a policy violation. Benitez was informed that the administrative
investigation was initiated from grievances by White attorney staff, whom were the
subject of Benitez' internal complaint to the Defendant's administration in September
2020.

19. Benitez was informed that the caseload review meeting with the temporary
supervisor in November 2020 was presented to the White management staff as a

disciplinary meeting, although follow-up emails from the temporary supervisor state the meeting was a review and to facilitate familiarization with Benitez' caseload. No discussion of policy violations was noted or provided to Benitez during or after the November 2020 meeting.

20. While temporarily under this supervisor from December 2020 – March 2021, this supervisor authored a Work Performance Evaluation. The signed evaluation report was then reportedly lost by the temporary supervisor before it was finalized with HR. In April 2024, the Defendant later produced a version of the document that was later provided during an Equal Employment Opportunity Commission (referred to hereafter as "EEOC") investigation in February 2024.

21. The HR investigation concluded with no findings of wrongdoing for Benitez, and Benitez was assigned to a new direct supervisor.

22. After approximately one month under supervision by a new supervisor, Benitez continued to experience racially motivated attacks by White attorney staff. Benitez' direct supervisor raised the concerns to the Defendant's management that Benitez was being unfairly targeted.

23. Benitez sought union assistance from the assigned union representation SEIU 721 in April 2021 to address potential retaliation but was informed that despite Benitez' concerns, no protections or grievances were available unless new investigations or discipline occurred from the Defendant.

24. From June 2020 to October 2023, Benitez was supervised by various staff. During this time, no performance issues or communication problems were discussed that would have impacted Benitez's chances for promotion or satisfactory work performance.

25. In March 2021, a White employee vacated the position of Lead SSP for the J/D unit. Benitez was informed that this previous Lead SSP for Benitez' unit, a White employee, was frequently reported as combative and uncooperative by the same White attorney staff that were the subject of Benitez' complaint, yet no administrative actions were taken against the White staff until their resignation.

26. Benitez applied for the vacant Lead SSP position in August 2021, as Benitez met the minimum qualifications for the role and additionally had seniority in the assigned unit, as Benitez was frequently requested to assist in training of new staff and facilitating court process trainings.

27. Benitez interviewed for the promotional position in February 2022 and was informed in June 2022 that Benitez was not selected. After being denied the promotion, a White employee with documented performance issues received the position.

28. When seeking clarification, the Defendant's management staff explained that the non-selection was due to Benitez' previous transfer request, making it inappropriate to offer the promotion. This explanation was based on misinformation, as Benitez's

transfer request in May 2020 was unrelated to the 2022 promotion and occurred before Benitez was eligible for the Lead SSP promotional position.

29. Around March 2023, Benitez reapplied for the still vacant Lead SSP position, having routinely performed many of the duties associated with the role.

30. On August 03, 2023, Benitez notified assigned manager and direct supervisor in writing of concerns regarding conduct of a White attorney staff's handling in a case that was assigned to Benitez. Instead of getting a response to the concerns, or acknowledging that they were received, the assigned manager assisted the White attorney staff in initiating a second HR investigation into Benitez' performance in response.

31. On August 18, 2023, Benitez relocated their physical address and requested a transfer to a closer regional office. During an in-person conversation, the Defendant's management in the proposed office confirmed with Benitez a vacancy for a "3/12" weekend shift. The management further forwarded a transfer request to Benitez' current management regarding Benitez' reassignment.

32. On August 21, 2023, Benitez received an email from the Defendant's White management, informing Benitez was being investigated by HR for violating a department policy. The complaint was substantiated despite no direct evidence of wrongdoing presented. Benitez submitted a written rebuttal providing evidence of compliance with departmental policies, with no redress.

33. Relative to the allegations of misconduct, Benitez pointed out a former White employee assigned to the same case as Benitez and assigned to the Defendant, a White attorney staff. This former employee was also accused of similar misconduct yet faced no further investigation or disciplinary actions. The former employee reported that the White attorney staff argued to management on the former employee's behalf, advising that they did not believe the allegations about the former employee.

34. After submitting an initial transfer request in August 2023, Benitez and several members of the J/D unit submitted a collective reassignment request in September 2023 to the Defendant's management. The employees listed on the collective request consisted of one (1) White employee, one (1) Hispanic employee and two (2) African American employees. Benitez was the sole employee addressed by the Defendant's management for the request. An additional Hispanic employee refused to participate in the request due to concerns about jeopardizing promotional advancement. The Hispanic employee received a promotion to supervisor after the collective request was reviewed.

35. On September 06, 2023, Benitez met with the Department's manager to receive an update about the transfer request. The manager informed Benitez that the transfer request would be addressed after the HR investigation concluded.

36. On the same day, Benitez' fellow employee was observed leaving the Defendant's White management's office and was overheard by Benitez and multiple staff informing several staff members that the White management staff was reassigning Benitez' supervisor to another unit due to changes. The employee further disclosed that Benitez was being investigated and moved to another unit due to conflicts with White attorney staff. Benitez was not informed of this information by any of the Defendant's management prior to hearing this confidential information discussed openly during the ongoing HR investigation.

37. On September 14, 2023, Benitez' unit was assigned to a new supervisor. This supervisor informed their former unit of approximately seven employees that they were reassigned to Benitez' unit due to the Defendant's management's concerns about Benitez and that Benitez would be moved to another unit as a result. At the time this information was not known to Benitez.

38. Following receipt of this information, Benitez notified the investigating HR business partner via written complaint about the breach of confidentiality concerning a personnel matter.

39. On September 26, 2023, Benitez was served a written "letter of reprimand" stating the Defendant's management substantiated the allegations of policy violation and misconduct. Benitez was encouraged to file a written rebuttal.

40. On or around September 27, 2023, Benitez then received an email from the Defendant informing Benitez that the Defendant granted the collective reassignment request to be transferred to another unit. However, when Benitez sought clarification on the requested transfer being inaccurate, Benitez was informed they were "not meeting workplace standards" and management refused to approve Benitez' transfer. Benitez was further instructed that a new interim manager would determine when Benitez was approved to transfer.

41. When Benitez requested further clarification regarding the standards for transferring to a specialized unit versus transferring out of the office, the Defendant responded that the question was "answered and the matter closed."

42. The email correspondence was later provided to the Defendant's Equal Employment Opportunity Department (hereafter referred to as "EEO") in official complaints submitted regarding the Defendants conduct in using their official position to unjustly delay requested transfers and subjecting Benitez to new working conditions that did not apply to all included on the collective transfer request submitted in September 2023.

43. On or about August 10, 2023, Benitez spoke with the Defendant's management who confirmed that Benitez was recommended for the position by the interviewing management team.

44. By October 2023, after receiving no further official communication about the status of the promotion, Benitez contacted the Defendant's HR department and was

transferred to the recruitment team. Recruitment staff confirmed that Benitez was successful in the interview process and that their name was submitted to management would make the final selection.

45. The official job description for Defendant's management supports the recruitment staff's statement that the Defendant's leadership is responsible for selecting and supervising subordinate supervisors, evaluating work performance, and making final decisions regarding promotions. This information contradicts the Defendant's assertion that other staff, not the Defendant's leadership, made the final decision or that the recruitment team had already decided that the Benitez was not a candidate for the promotion shortly after the interview.

46. Recruitment staff informed Benitez that the Defendant's leadership would be contacted and instructed to notify Benitez the following week of the promotional decision. On October 10, 2023, Benitez received an email from the Defendant's leadership's secretary, requesting a meeting to discuss their status in the interview process. During the meeting, leadership informed Benitez that they were not selected for the promotion.

47. Leadership further clarified that the decision was made in June 2023, and although Benitez was already performing the duties of the promotional position, the rest of the team felt Benitez was not ready. When Benitez asked for clarification, leadership stated the following: that Benitez is a "good worker, but county counsel doesn't forget," which Benitez believes referenced a prior complaint Benitez submitted regarding this same staff's conduct. And that management (who interviewed Benitez) felt that Benitez was not ready, despite already demonstrating the ability to perform the role. It was further suggested that Benitez take on more leadership opportunities.

48. The Defendant later reported during the EEOC investigation that the Defendant's leadership does not decide on the outcome of promotional opportunities for leadership roles. Leadership had previously informed Benitez that the hiring team for supervisory and leadership roles consists of leadership staff and attorney staff.

49. On October 5, 2023, Benitez met in person with the interim manager to discuss the assignment to a new unit, the significantly different duties of the assignment and the progress of the transfer request. The interim manager informed Benitez that the Defendant's White management was still responsible for determining Benitez' approval to transfer. Further the interim manager indicated that the white management team noted that Benitez had specifically requested a reassignment to the specialized unit. Benitez informed interim manager that this information was incorrect and cited emails in which interim manager was included in, discussing the discrepancy.

50. During the meeting, the interim manager further informed Benitez that assignment to the specialized unit with significantly different job duties was to limit Benitez' contact

with the White attorney staff Benitez had previously reported. Benitez was referred
back to the White management staff regarding the transfer request status inquiry.

51. Following the new assignments, Benitez received medical treatment and was
temporarily placed on a medical leave from October 1-October 5, 2023 due to work-
related stress.

52. On October 10, 2023, Benitez met with the Defendant's white management and was
informed that Benitez did not receive the promotion as the white management was
overruled in a team decision for selection.

53. On October 12, 2023, Benitez requested a meeting with the Defendant's
administration staff for reassessment of the transfer request, and to report multiple
denied promotions, concerns of targeting and discrimination contributing to a toxic
work environment.

54. Benitez informed administration staff about the management's comment about
Benitez "throwing her under the bus" in 2020 and its impact on subsequent
investigations into Benitez' performance and career progress. Benitez was advised
by the administration that Benitez "should have confronted" the management staff
directly after hearing about Benitez being labeled as "aggressive" by White staff.

55. During the meeting, the administration staff further advised they would investigate
Benitez' denied promotions by the White management staff and clarified that the
final decisions for leadership promotions were not based on a team decision but
were the responsibility of the Defendant's White management.

56. Benitez was asked to give the administration staff one week to look into the transfer
request. A week later, after Benitez requested an update, administration informed
that the requested office might not offer Benitez' requested schedule. At no time
during the meeting and subsequent follow up did the administration inform that
Benitez' transfer had been denied as the Defendant later claimed to the EEOC.

57. Benitez received medical treatment for stress and was again placed on a medical
leave from around October 21- December 11, 2023.

58. During the absence, Benitez sent follow-up calls and emails on October 27 and
October 31, 2023, to administration requesting updates on their investigation of the
concerns reported. On the evening of October 31, 2023, Benitez received a
response from administration that the requested shift was now unavailable, and the
transfer would not be approved without management's consent. Benitez' concerns
about being targeted by this specific management were reiterated, emphasizing that
the refusal of one transfer while approving another was an attempt to force
resignation given that Benitez had relocated.

59. Benitez questioned the administration staff's judgment for allowing management to
decide on the transfer despite awareness of issues causing a hostile work
environment. Administration staff pledged to investigate the disciplinary actions
served to Benitez in September 2023 to identify the specific policy allegedly violated.

60. During the conversation, administration staff inquired about Benitez' medical absence from work. Benitez disclosed that the treatment by management was affecting Benitez' mental health, manifesting in physical and psychological symptoms when interacting with management or working under their leadership.

61. In November 2023, Benitez was informed that a White employee had received the promotion to Lead SSP. Said employee does not meet the minimum qualifications for the role as outlined in the Defendant's official job description, which requires: Two years of experience in a government child welfare agency performing complex social work assignments, comprehensive diagnostic assessments, in-depth clinical intervention, and treatment plans. A Master's degree in Social Work from an accredited school or a closely related field. Although the White employee lacked the necessary qualifications for the position they were additionally able to negotiate a $10 per hour raise for the promotion.

62. Benitez filed an official charge of discrimination and retaliation with the EEOC in November 2023. The charge was officially served to the Defendant in February 2024. The investigation was closed as unable to determine cause in May 2024 and a right to sue was issued to Benitez.

63. In early January 2024 Benitez received correspondence from the union representative that the Defendant's HR was approving Benitez' transfer request with an official date pending confirmation of availability.

64. Benitez received further correspondence noting that after union representation pressed for a transfer date, the HR business partner then threatened a third investigation into alleged unprofessional conduct by Benitez and noted that the transfer was now at risk of being officially denied.

65. Following the written complaints submitted in September 2023, Benitez was notified in October 2023 of reassignment to an interim supervisor.

66. Benitez was advised by the interim supervisor during a telephone call around January 9, 2024, that they were instructed by both the interim manager and the Defendant to impose work conditions and specific requirements in a manner that would not make it apparent that the conditions applied specifically to Benitez.

67. In the following weeks, emails were received from the interim supervisor and manager directing Benitez to report to a specific office, then accusing Benitez of reporting to another office during scheduled work time, and requesting Benitez complete a new schedule request form.

68. On or around February 14, 2024, Benitez met with the Defendant's Director to discuss concerns related to the official complaints filed on or around September 29, 2023. During this meeting, Benitez requested assistance with a hostile work environment and reiterated concerns of conduct by the Defendant.

69. During the meeting, Benitez raised concerns about the lack of an approved work schedule, the denial of multiple promotions due to allegedly unlawful selection

practices, and a delayed transfer request. Benitez informed the director that the
hostile working conditions were causing undue mental stress and an inability to
perform job functions without fear of further retaliation.

70. Regarding the second promotion denial, Benitez reiterated concerns to the director
about this discriminatory denial in the February 2024 meeting with the director.
Benitez received a response that they "asked to transfer anyways."

71. During the meeting, the director further responded that employees should not expect
an immediate transfer due to existing waitlists. Benitez then referenced emails
between HR and the union representative indicating that a transfer had been
approved around December 2023, with Benitez awaiting an open position in the
requested regional office. Benitez also had an email from management indicating a
vacant position for approximately 30 days in the requested office.

72. Following this meeting, administration staff contacted Benitez by phone, informing
them that if Benitez did not return to work on February 15, 2024, they would receive
an email with instructions for filing a leave of absence. Administration also stated
that Benitez would have to select "leave without right to return" on the request.

73. Following the meeting, Benitez responded to the email instructions received,
clarifying the purpose of the meeting to receive assistance with working conditions
and unresolved issues remaining. Benitez submitted the leave of absence forms as
requested.

74. Benitez received medical attention regarding work stress following the meeting and
was placed on a medical stress leave from February 15, 2024 – May 28, 2024.

75. During the leave of absence, no additional attempts at reconciliation were offered by
the Defendant, including a lack of investigation into numerous official complaints
submitted to the Defendant's EEO Department in September 2023 and January
2024. Benitez listed witnesses on some complaints, and witnesses have not been
contacted to date.

**V. Relief**

Compensatory Damages:

1.Economic Damages:

Lost Wages: From denial of promotions in 2021 and 2023, additional salary and benefits would have increased salary by approximately $30,000 per year. Past lost wages of approximately $30,000 and future lost wages total approximately $90,000 (estimated for three years). Past and future lost wages from medical leave of absence approximately $20,000.

Lost Benefits: Reimbursement for lost retirement contributions $12,000 (estimated for one year).

Legal fees: Service of Process $150 per person, Discovery Costs $5000, Expert Witness Fees $10,000, Trial Costs $10,000 for a total of $25,600.

2.Non-Economic Damages:

Emotional Distress: Compensation for psychological suffering, anxiety, depression, and emotional pain caused by discriminatory, retaliatory, or defamatory actions approximately $50,000.

Loss of Enjoyment of Life: Damages for the severe impact on my quality of life, including personal relationships and overall well-being total approximately $50,000.

Medical Expenses: Treatment costs approximately $6,000 per year, future treatment costs $30,000 (estimated for five years).

Punitive damages claimed: $100,000 on the basis of:

Intentional Discrimination: The employer intentionally employed discriminatory actions not based on policy and ignored multiple complaints from 2020-2023 about racial bias, resulting in significant emotional distress and career setbacks.

Reckless Misconduct: The employer engaged in a pattern of discriminatory behavior in retaliation for the employee's complaints of personnel misconduct and racial basis. The employer issued a written notice that the employee has no right to return to work despite the medical leave being ordered by the employees' primary physician and showed no intention to rectify the situation.

Severe Impact: The discrimination and retaliation led to severe personal and professional consequences, including long-term emotional distress, significant financial losses, and damage to reputation, with no corrective measures taken by the employer.



**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**

**Los Angeles District Office**
255 East Temple St, 4th Floor
Los Angeles, CA 90012
(213) 785-3090
Website: www.eeoc.gov

## DETERMINATION AND NOTICE OF RIGHTS
(This Notice replaces EEOC FORMS 161, 161-A & 161-B)

Issued On: 06/04/2024

**To:** Mrs. Tiyana Benitez
70 N San Mateo St Apt 3
REDLANDS, CA 92373
Charge No: 480-2023-06349

EEOC Representative and email:    BRANDON MANCIA
Federal Investigator
brandon.mancia@eeoc.gov

### DETERMINATION OF CHARGE

The EEOC issues the following determination: The EEOC will not proceed further with its investigation and makes no determination about whether further investigation would establish violations of the statute. This does not mean the claims have no merit. This determination does not certify that the respondent is in compliance with the statutes. The EEOC makes no finding as to the merits of any other issues that might be construed as having been raised by this charge.

### NOTICE OF YOUR RIGHT TO SUE

This is official notice from the EEOC of the dismissal of your charge and of your right to sue. If you choose to file a lawsuit against the respondent(s) on this charge under federal law in federal or state court, **your lawsuit must be filed WITHIN 90 DAYS of your receipt of this notice.** Receipt generally occurs on the date that you (or your representative) view this document. You should keep a record of the date you received this notice. Your right to sue based on this charge will be lost if you do not file a lawsuit in court within 90 days. (The time limit for filing a lawsuit based on a claim under state law may be different.)

If you file suit, based on this charge, please send a copy of your court complaint to this office.

On behalf of the Commission,

Digitally Signed By:Christine Park-Gonzalez
06/04/2024
Christine Park-Gonzalez
District Director

**Cc:**

Please retain this notice for your records.

Enclosure with EEOC Notice of Closure and Rights (01/22)

## INFORMATION RELATED TO FILING SUIT
## UNDER THE LAWS ENFORCED BY THE EEOC

*(This information relates to filing suit in Federal or State court **under Federal law**. If you also plan to sue claiming violations of State law, please be aware that time limits may be shorter and other provisions of State law may be different than those described below.)*

### IMPORTANT TIME LIMITS – 90 DAYS TO FILE A LAWSUIT

If you choose to file a lawsuit against the respondent(s) named in the charge of discrimination, you must file a complaint in court **within 90 days of the date you *receive* this Notice**. Receipt generally means the date when you (or your representative) opened this email or mail. You should **keep a record of the date you received this notice**. Once this 90-day period has passed, your right to sue based on the charge referred to in this Notice will be lost. If you intend to consult an attorney, you should do so promptly. Give your attorney a copy of this Notice, and the record of your receiving it (email or envelope).

If your lawsuit includes a claim under the Equal Pay Act (EPA), you must file your complaint in court within 2 years (3 years for willful violations) of the date you did not receive equal pay. This time limit for filing an EPA lawsuit is separate from the 90-day filing period under Title VII, the ADA, GINA, the ADEA, or the PWFA referred to above. Therefore, if you also plan to sue under Title VII, the ADA, GINA, the ADEA or the PWFA, in addition to suing on the EPA claim, your lawsuit must be filed within 90 days of this Notice and within the 2- or 3-year EPA period.

Your lawsuit may be filed in U.S. District Court or a State court of competent jurisdiction. Whether you file in Federal or State court is a matter for you to decide after talking to your attorney. You must file a "complaint" that contains a short statement of the facts of your case which shows that you are entitled to relief. Filing this Notice is not enough. For more information about filing a lawsuit, go to https://www.eeoc.gov/employees/lawsuit.cfm.

### ATTORNEY REPRESENTATION

For information about locating an attorney to represent you, go to:
https://www.eeoc.gov/employees/lawsuit.cfm.

In very limited circumstances, a U.S. District Court may appoint an attorney to represent individuals who demonstrate that they are financially unable to afford an attorney.

### HOW TO REQUEST YOUR CHARGE FILE AND 90-DAY TIME LIMIT FOR REQUESTS

There are two ways to request a charge file: 1) a Freedom of Information Act (FOIA) request or 2) a "Section 83" request. You may request your charge file under either or both procedures. EEOC can generally respond to Section 83 requests more promptly than FOIA requests.

Since a lawsuit must be filed within 90 days of this notice, please submit your FOIA and/or Section 83 request for the charge file promptly to allow sufficient time for EEOC to respond and for your review.

**To make a FOIA request for your charge file**, submit your request online at https://eeoc.arkcase.com/foia/portal/login (this is the preferred method). You may also submit a FOIA request for your charge file by U.S. Mail by submitting a signed, written request identifying your request as a "FOIA Request" for Charge Number 480-2023-06349 to the

Enclosure with EEOC Notice of Closure and Rights (01/22)

District Director at Christine Park-Gonzalez, 255 East Temple St 4th Floor, Los Angeles, CA
90012.

**To make a Section 83 request for your charge file**, submit a signed written request stating it is
a "Section 83 Request" for Charge Number 480-2023-06349 to the District Director at Christine
Park-Gonzalez, 255 East Temple St 4th Floor, Los Angeles, CA 90012.

You may request the charge file up to 90 days after receiving this Notice of Right to Sue. After
the 90 days have passed, you may request the charge file only if you have filed a lawsuit in court
and provide a copy of the court complaint to EEOC.

For more information on submitting FOIA requests, go to
https://www.eeoc.gov/eeoc/foia/index.cfm.

For more information on submitted Section 83 requests, go to https://www.eeoc.gov/foia/section-
83-disclosure-information-charge-files.